SCHULTZ v. L. MUNDET & SON, Inc., et al.*

No. 13989.

Court of Appeal of Louisiana. Orleans.

Feb. 27, 1933.

---

*Rehearing denied March 27, 1933. Writ of certiorari denied by Supreme Court, May 1, 1933.

Tracy & Neuhauser and Henry M. Robinson, all of New Orleans, for appellant.

St. Clair Adams, of New Orleans, for appellee.

JANVIER, Judge.

This suit is brought under the Louisiana Workmen's Compensation Law (Act No. 20 of 1914 as amended). It has for its object the recovery of maximum compensation for the death of John Wellmeyer, deceased husband of plaintiff, who alleges that Wellmeyer died as the result of a burn on his right thumb received during the course of and incidental to his employment.

It is asserted that, in the wound caused by the burn, tetanus germs found a portal of entry and that, as a result, Wellmeyer became infected with tetanus, commonly called "lockjaw," and died a few days later.

Defendant, admitting the employment and the death of Wellmeyer, denies that the burning of the thumb had any causal connection, direct or remote, with the death, and alleges that the said death was not caused by tetanus and did not result "from any other cause or disease resulting from the injury, or traumatism, arising in the course of his said employment." Defendant further asserts, though it seems to have later abandoned its attempts to prove the assertion, that the cause of Wellmeyer's death was "heart disease (vegetative endocarditis) with bacteriaemia secondary to bad teeth."

As an alternative contention, defendant maintains that, if the death of Wellmeyer was caused by tetanus, the germ thereof is not shown to have entered and infected his body through the portal created by the burn and may have entered, instead, through a wound received a few days earlier, when Wellmeyer, while on a fishing expedition, in no way associated with his employment, injured himself on the point of a large fishhook.

The questions presented for our consideration are whether Wellmeyer's death resulted from tetanus and whether the disease from which he died, whatever it may have been, resulted from an accident which occurred during the course of and which grew out of the employment.

In the district court judgment was rendered dismissing plaintiff's suit and that judgment is now before us for review.

Since defendant, in its answer, alleged that the death had been caused by heart disease, counsel for plaintiff attempts to convince us that, even though the burden of proof may have originally rested upon plaintiff to show that death resulted from the cause alleged in the petition, when defendant interposed a special defense (death by heart disease not growing out of the employment), the burden shifted and defendant should be required to prove the special defense.

We find no authority for this view and believe that the burden in a compensation case, just as in almost every other form of litigation, rests upon plaintiff, and that in such a case as this, where the accident itself, if there had been no intervening subsequent disease, would manifestly have been trivial and of no importance, plaintiff must show that the subsequent disease was caused by or was stirred into fatal activity by the accident.

By first denying that the disease was that alleged and by asserting that, whatever it was, it did not result from the accident, and by then alleging that the cause of the death was heart disease, defendant cannot be said to have interposed a special defense and to have thus relieved plaintiff of the burden of proof. The charge that heart disease caused the death was entirely surplusage and, as such, was unnecessary. All that was required was that it be denied that death resulted from tetanus attributable to the industrial accident. Had defendant's answer been limited to such a denial, defendant could have offered evidence to show heart disease, because, by showing death by heart disease of long standing and not excited into fatal activity by the accident, it would have shown that death did not result from the cause alleged by plaintiff, nor from a cause associated with the employment.

Under the pleadings here the burden did not shift and plaintiff is under the necessity of proving her allegations by a preponderance of the evidence, since "the circumstances do not bring the case within that

class where disability immediately follows the injury and disease develops in such period, where it might be said that the proof that the illness may have been caused by the injury would be sufficient, and as there is not any presumption which would support the theory that the injury caused the illness, it must be proven by a preponderance of the evidence." Hammons v. Edwards, 9 La. App. 62, 118 So. 852, 854. See, also, Howerton v. McCrary (La. App.) 144 So. 68; Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666.

When Wellmeyer received the burn which, it is charged, permitted the entry into his system of the tetanus germ, he was away from New Orleans, and, though it is now maintained that the burn was somewhat serious, he did not consult a physician, but himself painted it with mercurochrome and continued at his work for a day or two, and then, at the end of the week, returned to his home to spend Sunday with his family. Not feeling well, he consulted a physician, who apparently was not alarmed at his condition, and, believing that he was suffering from an attack of influenza, prescribed accordingly.

On the second day following the first treatment Mrs. Wellmeyer, not satisfied with the condition of the sufferer, called in another physician, who made a complete examination and then advised removal to a hospital. Wellmeyer was taken to the French Hospital in this city, in which institution he died on the next night at about 8:15 o'clock. The cause of death given by the physicians at the hospital, as it appears on the death certificate, was "ulcerative endocarditis, septicemia." This is what is commonly known as "heart disease" and it will be noted that no mention was made of tetanus.

Several physicians were in attendance upon Wellmeyer, both at his home and at the hospital, and no one of them, at the trial below, expressed the opinion that he had been suffering with tetanus. On the contrary, all are of the view that tetanus was not the cause of the death, though Dr. Baron, the physician who advised removal to the hospital, stated that when he did so he thought that there was a possibility, in view of the history of Wellmeyer, which showed a wound, that he might have tetanus.

It is stated by all the physicians and medical experts that the symptoms of tetanus are clearly defined and easily recognized and that this is particularly true when the incubation period is short. Since the burn took place only four or five days before the disease, whatever it was, manifested itself, and since all agree that four or five days is a short incubation period for tetanus, it follows that, if the disease had been tetanus, the symptoms thereof would have been clearly defined. That several physicians were unable to recognize it as tetanus is rather strong proof of the fact that, in truth, it was not that dreaded disease.

However, Dr. Duval, a pathologist of great experience and admittedly an expert of national renown, testified that in his opinion tetanus was the cause of death and he explained in detail his reasons for this view. He had not seen Wellmeyer prior to his death and founded his opinion upon an examination of the exhumed remains of the torso about nine months after the death.

Tetanus leaves no marks which are discoverable after death, and it is quite evident, from Dr. Duval's testimony, that his conclusion was arrived at by a process of elimination and that, since he was unable to find evidence of any other disease which could have resulted in death, he accepted the sole remaining explanation and concluded that tetanus had been the cause.

Of course, in reaching this conclusion Dr. Duval also had before him the entire history of Wellmeyer's illness and, in reaching a conclusion, was no doubt aided by what he found therein.

But at the post mortem examination of the torso, which was made by Dr. Duval, there were also present other pathologists bearing great reputations, and they, Dr. Harris and Dr. Friedrichs, are positive that in the exhumed lungs of Wellmeyer they found convincing proof that he had died of lobular pneumonia and they testify that it was not tetanus which caused the death. With this finding Dr. Duval disagreed and he explained in detail his reason for believing that Dr. Harris and Dr. Friedrichs were mistaken.

A recapitulation of the medical evidence referred to up to this point shows the following:

Two physicians, Dr. Montelepre and Dr. Baron, and an interne, Dr. Ricks, who since graduated and has been admitted to practice, expressed very positive views that Wellmeyer did not die of tetanus. No physician who was in attendance prior to his death expressed a contrary view.

Two pathologists, who examined the exhumed torso, expressed the opinion that he had not died of tetanus, but of pneumonia, while one pathologist, who conducted the examination, believed he had died of tetanus.

Many more medical men testified in answer to hypothetical questions based on the progress of Wellmeyer's disease and on the hospital records with reference thereto, and, in answer to such questions, the following opinions were expressed:

Only one, Dr. Heiman, believed that tetanus caused the death.

Dr. Roy B. Harrison, Dr. Sam Hobson, Dr. Edmund McC. Connelly, and Dr. Carroll W. Allen were of the opinion that pneumonia and not tetanus was responsible.

Thus, to sum up the entire medical testi-

mony, we find that two experts give tetanus as the cause of death, while eight are equally certain that tetanus was in no way involved.

It is seldom, indeed, that there can be found a case in which medical testimony is so abundant or so much entitled to respect, and, having read the carefully thought out reasons of each, we feel that we could confidently accept the opinion of any, were it not for the presence in the same record of the opinions of all of the others.

Independently of the conclusions reached by the respective doctors, we have discovered, from statements in which they all agreed, that among the almost infallible indications of tetanus are:

First, an unusual consciousness and keenness of intellect almost until the moment of death.

Second, convulsions which are brought about by the slightest draft, or noise, or disturbance.

Third, a vice-like rigidity of the jaws.

Fourth, risus sardonicus, or a peculiar smiling expression caused by the drawing of the facial muscles about the mouth.

Fifth, opisthotonos, or a throwing back of the head and a bending of the whole body in the form of a bow.

Sixth, a very rapid pulse.

Symptom No. 1. All the attending physicians, as well as Mrs. Wellmeyer and her relatives, state that from the beginning of his illness Wellmeyer was almost constantly in a state of semicoma. This was contrary to what should be expected in tetanus, since Dr. Duval, referring to tetanus sufferers, says: "Usually they are bright and clear as a dollar and their mind is clear right up to the very last. That is common in tetanus."

Symptom No. 2: Dr. Heiman, an expert relied on by plaintiff, in answer to the question, "Have you ever seen a case of death by tetanus without convulsions?" replied, "No, sir." And yet, the attending physicians state that at no time was Wellmeyer seized with a convulsion. Dr. Ricks, in answer to the question whether there had been any convulsions, said there positively had not been any.

Symptom No. 3: All agreed that there is a vice-like rigidity of the jaws and that usually the sufferer cannot open his mouth, even a fraction of an inch; it being often necessary that food be administered by means of a tube inserted through the nostril. The record shows that Wellmeyer could talk almost to the last and at no time were his jaws locked. On the day before he died he talked to the attending interne.

Symptom No. 4: The peculiar smile known as risus sardonicus seems to be one of the symptoms never absent from a case of tetanus, and yet we find no evidence of it here, although the physicians were familiar with this symptom and would certainly have noticed it had it been present. Dr. Ricks, the interne, referring to the symptom known as risus sardonicus, said: "He did not have what that means on his face."

Symptom No. 5: The meaning of this term can best be obtained from a reading of the following testimony given by Dr. Heiman:

"Q. Isn't opisthotonos one of the characteristic and principal symptoms in tetanus? A. Yes, sir.

"Q. Now, opisthotonos sometimes, and very frequently, is so pronounced that the back of the head is thrown so far back and the heels so far up— A. In the shape of a bow.

"Q. Like a crab? A. Yes, sir.

"Q. The back of the heels meeting the top of the head? A. Yes, sir."

We find no evidence of such a condition in Wellmeyer's case and, in fact, on the day of his death a spinal puncture was made without difficulty. This required that the patient bend in a position exactly opposite to that in which his body would have been stiffly drawn had opisthotonos been present, and the doctor who made the spinal puncture testified that he had no difficulty in doing so.

Symptom No. 6: Dr. Heiman states that when a patient has tetanus his pulse is very rapid. "It is not slow due to the fact that the twitching of the muscles excites the patient and he is very irritable and has a very rapid pulse." However, the attending interne said that the hospital record showed a "very slow, full pulse."

According to the hospital record "the patient expired very easily," and yet it is attested by most of the physicians that in tetanus cases death in most instances occurs during the most excruciating agony, so that here, again, we find one of the usual symptoms entirely absent.

■ We well realize the stupendous task which confronts us when we, entirely without experience in medicine, surgery, pathology, or neurology, are called upon to reach a conclusion in a matter over which the leading medical authorities of the community have disagreed; but we approach the problem dutifully appreciative of the fact that a conclusion must be reached and that we must reach it. We have given full consideration to all the facts as we gather them from the record, and we have endeavored to discover substantial reasons on which to base our views. We feel that we have reached the proper result and that the truth is that the unfortunate Wellmeyer died as the result of some disease, other than tetanus, that was not caused or aggravated by the industrial accident. But, whether we are correct in our finding on that fact or not, of one thing we are positive, and that is that plaintiff has not proven the contrary and has not shown, by a preponderance

of the evidence, that the death resulted from tetanus, or, in fact, resulted from any disease attributable to or excited into activity by the industrial accident.

"A case must be made out to a legal certainty; this is elementary, and is as true in the case of a suit under the Workmen's Compensation Act, like the present, as in any other." Haddad v. Commercial Motor Truck Co., 150 La. 327, 346, 90 So. 666, 673.

See, also, Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734.

The judgment appealed from is affirmed.

Affirmed.