HERGET, Judge.
Plaintiff, Mrs. Ernest Eugene Lee, widow of Mr. Ernest Eugene Lee, instituted this *704 suit against defendant, Aetna Life Insurance Company, alleging said company had issued a group insurance certificate covering the employees of National Food Stores of Louisiana, Inc. where Plaintiff’s husband was employed, under which policy there was provided life insurance as well as insurance for accidental death and dismemberment of the insureds. That following the death of Mr. Lee on May 27, 1960 and upon due proof of loss having been furnished by her, Defendant Company paid to her, as beneficiary, the sum of $3,000 under the group life policy. She then alleges that Mr. Lee “ * * * suffered a heart attack when he attempted to get a drunken man to leave the premises of his employer’s warehouse where Ernest Eugene Lee was working as a night watchman.”, and that Mr. Ernest Eugene Lee died from the attack “ * * * brought about by the altercation * * said death resulting from external, violent and accidental means, she therefore seeks the additional sum of $3,000, the limit thereof under said conditions, plus reasonable attorney fees.
Defendant answered Plaintiff’s petition, admitted the payment of the $3,000 under the group life insurance policy issued by it, denied generally the allegations of Plaintiff’s petition and in paragraph 14, answered:
“Under the terms of Policy No. LL-4S041, no benefits are payable for the death of a person insured unless ‘such loss resulted from bodily injuries * * sustained * * * solely through external, violent and accidental means, independently of all other causes; * * ’ and does not occur ‘directly or indirectly, wholly or partly, by: Bodily * * infirmity, or * * * Any other kind of disease, * * ”
Counsel then averred the death of Mr. Lee did not come within the coverage of the policy provided therein for accidental death and therefore denied liability to Plaintiff under the policy for said claim.
No testimony was taken in open court but the evidence consisted of depositions of the witnesses, and of the offering by Plaintiff of a letter by Howard Hansen, M. D., together with a certified copy of the Certificate of Death as well as the Physician’s Statement annexed to the Proof of Death executed by Doctor Douglas L. Gordon, acting for Doctor Chester A. Williams, Jr., Coroner, furnished by Plaintiff in connection with the claim for life insurance. Upon the evidence so offered, the Trial Judge, for written reasons assigned, rendered judgment rejecting the demands of Plaintiff and dismissing her suit, from which judgment Plaintiff prosecutes this appeal.
The allegations in Plaintiff’s petition referred to supra as to the activities of Mr. Lee upon the occasion in which he suffered the heart attack are not supported by the testimony elicited in the depositions. It appears that one Eddie Nunnery, a former employee of National Food Stores visited the warehouse of said company where the deceased Mr. Lee was employed for the purpose of visiting with a Mr. Breaux who was then there employed. The testimony reflects that Mr. Nunnery arrived at the warehouse somewhere between 10-10:30 p. m. on the 26 of May, 1960; that though Mr. Nunnery had been drinking intoxicants he was not drunk; that though he had had a fight with a son of Mr. Lee, Nolan Lee, at the establishment previously while there employed, on the occasion of this particular visit he had a friendly discussion with Nolan, at which time he gave verbal assurances to Nolan he was no longer angry with him and that, likewise, Nolan responded he had no animus toward Mr. Nunnery; that Mr. Nunnery assisted his friend, Mr. Breaux, and another employee of National in unloading some flour from a freight car; that at no time did Mr. Nunnery create any disturbance while there; that though he did josh with Mr. Breaux, same was done in a friendly, amiable manner; that at approximately 3 minutes to 1 on the morning of May 27 all of the employees who were then on the particular shift were gathered around *705 the time clock to punch out as their day ended at 1 a. m. and that at about that time the deceased, Mr. Lee, made his appearance as he was employed as a nightwatchman and would begin his day at that .time; that Mr. Nunnery, upon seeing Mr. Lee, accosted him to tell him that he, Nunnery, and Mr. Lee’s son Nolan had no hard feelings and were friends, at which time Mr. Lee invited Mr. Nunnery to step outside the door of the warehouse. Upon doing so a discussion ensued between these two during the course of which Mr. Lee opened the pocket knife he had and was heard by some of the witnesses to admonish Mr. Nunnery that if he hit him like he hit his son he would kill him. The evidence further shows Mr. Nunnery was in no way attempting to strike or injure or even argue with Mr. Lee, but, to the contrary, had only in mind satisfying Mr. Lee he and his son no longer had any hard feelings and were friendly. Witnesses related in response to Mr. Lee’s admonitions to Nunnery, he informed Mr. Lee he had no intention of striking, slapping or having any difficulty with him whatever and, in fact, called to Mr. Lee’s son, Nolan, to join them, evidently for the purpose of impressing the senior Mr. Lee of the fact of the renewed friendship. Though Mr. Nolan Lee in his deposition emphasizes the belligerency and drunkenness of Mr. Nunnery, he admitted that on the night in question Mr. Nunnery had apologized to him, expressed his friendship and he likewise had reciprocated. However, he did relate that earlier that night Mr. Nunnery had, in an effort evidently to cause trouble, removed a cap from the oil pipe on the lifter Nolan was operating and had thrown same at a passing train. No other witness, however, corroborated this incident. Despite the fact from the testimony of Mr. Nolan Lee it would appear Mr. Nunnery on the night in question was in a belligerent mood, it is inconceivable that he would have remained, as did the other employees of National, inside the building joking and passing the time away if he were in any way at all concerned that his father was actively engaged in a heated dispute, argument and possible fight with Mr. Nunnery only 25 feet away. The testimony shows that at approximately 10 minutes past the hour of 1 a. m. Mr. Lee turned to re-enter the warehouse, at which time he became unstable on his feet and there is testimony of some that Mr. Nunnery supported him and laid him on the ground, whereas Mr. Nolan Lee related he caught his father and laid him down where he succumbed.
It is Plaintiff’s contention the cause of Mr. Lee’s death was external in that same was the result of the assault made upon him, though there was no physical contact, which precipitated an emotional stress, in consequence of which his already diseased heart gave way and thus his death was caused by accident within the meaning of the policy. The certified copy of the Certificate of Death, as does the Physician’s Statement, signed by Dr. Gordon acting for the Coroner gives the cause of death as “coronary thrombosis.” We copy herewith the report offered by counsel for Plaintiff of Doctor Howard Hansen, as follows:
“In reply to your.question, Tf a man, with a heart condition such as Mr. Lee had when you last examined him, were subjected to threat of personal violence, could this cause a fatal heart attack?’, I submit the following observations :
“I last examined Mr. Ernest Eugene Lee February 9, 1960, at which time he had arteriorsclerotic heart disease with coronary arterial insufficiency and angina on exertion. I advised him to keep on hand nitroglycerine tablets for sublingual use in event of angina pain. On March 8, 1960 I prescribed for him by telephone one hundred nitroglycerine tablets.
“In my experience, many fatal heart attacks have been so closely associated with emotional stress and/or undue physical exertion that I believe there is a causal relationship between such incidents and fatal heart attacks.”
*706 The Certificate of Death and the Coroner’s Report, if same be accepted as such, are limited only to the proof of death itself and are not admissible for the purpose of proving the cause thereof. 46 C.J. S. Insurance § 1337; Pecoraro v. New York Life Insurance Company, La.App., 141 So. 501; Webster v. New York Life Insurance Company, 160 La. 854, 107 So. 599; Brooks v. Washington National Life Insurance Company, La.App., 79 So.2d 653.
A reading of the letter of Doctor Hansen, though same suggests the possible cause of the death of Mr. Lee to be emotional stress, does not affirmatively express the view in fact Mr. Lee’s death did result from such emotional stress. Accordingly, as the burden of proof rests upon the Plaintiff to prove her case by a preponderance of the evidence, we are of the opinion such proof tendered does not satisfy this burden and leaves only to conjecture the conclusion the emotional stress could have caused his death.
Moreover, we are unable to conclude the evidence reveals Plaintiff’s husband came to his death as a result of external violent accidental means inasmuch as we do not find that Mr. Nunnery, with whom the alleged altercation took place which Plaintiff maintains caused the death of Mr. Lee, can be charged with any act on his part precipitating the difficulty. Any emotional stress or strain which Mr. Lee sustained resulted from actions of his own volition and in no way, except an attempt to allay Mr. Lee’s feeling of antagonism, did Mr. Nunnery have a part therein. In our opinion the evidence shows if, in fact, there was an altercation between Mr. Nunnery and Mr, Lee, the same resulted from Mr. Lee being the aggressor therein. If so, his death was not caused by accidental means. We are in accord with the observations of the Court in Barham v. State Life Insurance Company of Indiana, 17 La. App. 253, 135 So. 730, where the Court at page 731 reasoned:
“It is sure that the insured came to his death by external and violent means, and the only question is: Did he come to his death by accidental means? We think not. In the case of Franchebois v. New York Life Insurance Co., 171 La. 358, 131 So. 46, 50, the court said:
“ ‘Our conclusion is that the insured was the aggressor and by his own act precipitated the difficulty which resulted in his death. Therefore, his beneficiaries cannot successfully urge that, within the meaning of the policies, the insured’s death was brought about by accidental cause.’ Also see Meister v. General Accident Corporation, 92 Or. 96, 179 P. 913, 4 A.L.R. page 718.”
For these reasons the judgment of the Trial Court is affirmed.