236 So.2d 847 (1970)
Diane HULL, Widow of James B. Hull, Jr., et al., Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.
No. 7893.
Court of Appeal of Louisiana, First Circuit.
May 25, 1970.
Rehearing Denied June 30, 1970.
*848 Robert Vandaworker, of Taylor, Porter Brooks & Phillips, Baton Rouge, for appellant.
Harry P. Gamble of Gamble & Gamble, New Orleans, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Defendant, Singer Sewing Machine Company, employer of decedent, James B. Hull, Jr., and its insurer, Liberty Mutual Insurance Company, appeal from a judgment of the district court awarding decedent's widow, Diane Hull, workmen's compensation benefits for and on behalf of two minor children of decedent's marriage to plaintiff.
*849 The principal issues are: (1) was decedent in the course of his employment at the time of death, and (2) did decedent die of injuries sustained in a compensable accident or did he die of hypoglycemic shock just prior to the automobile accident in which he was involved and subsequent to which he was found to be dead. Plaintiff has answered the appeal praying for penalties and attorney's fees allegedly due because of defendant's arbitrary refusal to pay benefits. We are of the opinion that the judgment appealed from is correct insofar as it awarded to plaintiff maximum compensation benefits for the support of the two children but we disagree with the judgment insofar as it awarded plaintiff the sum of $600.00 for funeral expenses incidental to the burial of decedent.
Decedent was employed by Singer as a sewing machine salesman and serviceman. During the period of employment his wages were approximately $100.00 per week.
It is undisputed that decedent was involved in an automobile accident at approximately 12:20 P.M. o'clock on July 20, 1966, on U. S. Highway 190, approximately 4.2 miles west of the Mississippi River Bridge in West Baton Rouge Parish. Decedent, traveling westerly on this four-lane highway, was driving a station wagon furnished by his employer. The station wagon crossed the neutral ground separating the east and west bound traffic lanes and collided with an eastbound tractor-trailer truck. The impact occurred virtually in the center of the eastbound lanes of traffic. Following the accident decedent was pronounced dead at the scene.
Decedent, a diabetic for many years preceding his death, was required to take daily injections of medication to control his diabetic condition. Despite such daily medication, decedent's diabetes could not always be controlled. On numerous occasions prior to his separation from his wife, he would become erratic and unstable or would suddenly lose consciousness as though he had fainted or "blacked out". On all but two of these occasions he would regain consciousness in three to ten minutes or could be aroused to the extent that he could be given coke, fruit juice or other liquids containing a high sugar content. Immediately following the consumption of such liquids plaintiff would recover. It was only on two occasions that it was necessary that decedent receive medical attention and treatment to bring him out of a deep coma (hypoglycemic shock). This condition was known to his employer.
Defendants' contention that plaintiff failed to prove that decedent was acting within the course of his employment on the day of the accident is without merit. Decedent's supervisor explained that he customarily assigned duties to decedent each day but that on July 20, 1966 he had given decedent no specific instructions. It was established that decedent reported for work that day. Decedent's supervisor's call book did not reveal any particular appointments that would necessitate a trip to West Baton Rouge. However, decedent's general sales and service area included West Baton Rouge Parish and decedent was fully authorized to sell and service his employer's products in West Baton Rouge Parish without any specific authorization from his supervisor. Under these circumstances it must be presumed that decedent was on his company's business at the time of his death and was therefore acting within the course of his employment. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932).
Trooper G. Waddell of the Louisiana State Police was called to and investigated the accident. He stated that the accident occurred on a straight and level stretch of highway and that the point of collision was five feet south of the center line of the eastbound traffic lanes. Trooper Waddell further testified that when he arrived at the scene he determined that decedent was dead and therefore summoned Dr. Otwell, Coroner of West Baton Rouge Parish.
*850 Dr. Otwell testified that when he arrived at the scene of the accident he also pronounced decedent dead. When an eye witness to the accident explained to Dr. Otwell the erratic driving of decedent just prior to the accident, Dr. Otwell extracted a blood sample to see whether or not decedent was intoxicated at the time of the accident. This sample was sent to the State Crime Laboratory in Baton Rouge and its report was negative as to any alcoholic content. Dr. Otwell then was of the opinion that decedent had died instantly on impact because of multiple skull fractures.
Later that afternoon when decedent's brother had occasion to talk to Dr. Otwell, he mentioned that decedent was a diabetic. Dr. Otwell then asked that a blood sample be sent to the Baton Rouge General Hospital for laboratory analysis. This analysis revealed that decedent's blood contained only 11 milligrams of sugar per 100 c. c.'s of blood whereas the normal blood level is 80 to 110 milligrams per 100 c. c.'s of blood. Upon receipt of this information Dr. Otwell completed Item 17 of the death certificate relating to the cause of death which we quote as follows:
 Interval Between
 Onset and Death
"17. Part I. Death was caused by:
 Immediate cause (a) Compound fracture of skull sudden
Conditions, if any | Due to (b) Car truck accident 
which gave rise to |
above cause (a), }
stating the underlying |
cause last. | Due to (c) Probable hypoglycemic shock unknown."
With the above facts in mind, we now turn to the issue relating to the cause of death. The trial judge concluded:
"In the Court's opinion, the plaintiff has carried the burden with legal certainty that the deceased was killed while acting within the course and scope of his employment and that the fractured skull he received while acting in the course and scope of his employment was the cause of death.
The burden of proof was upon the defendant to show that his death was not occasioned by any accident but was a result of the hypoglycemic shock, a symptom of the disease known as diabetes. In this defense he has failed to carry the burden of proof. It is the Court's opinion that the probability of plaintiff suffering front a diabetic shock just prior to the accident and causing his death does not preclude his heirs from recovering compensation benefits as a result of his death." (Emphasis ours.)
Defendants asked for a new trial and contended that the above emphasized portion of the trial judge's opinion erroneously placed the burden of proof on the employer to establish the fact that the decedent did not die of a compensable accident. In denying defendants' motion for a new trial the lower court also wrote written reasons for denying the same. These written reasons clearly indicate to us that the trial judge was of the opinion that the plaintiff had borne the burden of proof to that legal certainty required by law. He then stated as follows:
"The Court stated in its original opinion that plaintiffs have proved that James B. Hull, Jr., was killed while working in the course and scope of his employment and that the fractured skull he received in the accident was the cause of *851 death. As far as the Court is concerned, plaintiffs have carried the burden of proof and proved their case to a legal certainty. The medical witnesses were unable to testify that the deceased was dead before the accident. It may be assumed as probable that the accident was occasioned by the disease from which the deceased was suffering, diabetes, but there can be no doubt that the accident in which he was involved killed him. In this respect the instant case can be distinguished from the Haddad case cited in defendants' memorandum for a new trial, for there is no doubt that James B. Hull, Jr., died from a fractured skull, and there is no proof that he was dead before the accident from a disease."
Defendants have again reurged that they were improperly saddled with the burden of proof. While defendants concede that the severity of the impact between the two vehicles and the resulting physical damage to decedent's body was sufficient to cause death, they also interpret the testimony given by Dr. Otwell to be to the effect that it was impossible to tell whether Hull was dead or alive at the time of the collision and therefore plaintiff had failed to bear her primary burden of proof. Defendants further contend that whether or not decedent was dead at the moment of impact is of no consequence because the accident itself was directly caused by his diabetes. We disagree with each of these contentions. Further, we think that it is important and essential to a proper resolution of this case to determine whether or not Mr. Hull was in fact dead or alive at the moment of impact because it must be decided whether or not Mr. Hull died of a diabetic condition or whether or not he died of multiple skull fractures while in hypoglycemic shock. Death under the first condition would not be compensable whereas it would be under the latter circumstances.
The issue as to the burden of proof stems not only from the initial language of the trial judge but also from the manner in which plaintiff sought to prosecute and defendants to defend their respective interests. Plaintiff did not call Dr. Otwell as a witness on her behalf, she merely offered the death certificate and the coroner's report which were introduced without objection. Plaintiff was entitled to proceed in this manner because § 2 of Act 151 of 1952 (the present equivalent of L.R.S. 33:1561) provides that:
"* * * The cause of death, the manner or mode in which the death occurred, as rendered by the coroner and incorporated in the death certificate filed with the Bureau of Vital Statistics of the Board of Health shall be the legally accepted manner and mode by which the deceased came to his or her death and shall be the legally accepted cause of death; * * *."
The pertinent portion of the death certificate is quoted above and states (a) that the immediate cause of death was "compound fracture of skull" and that such death was "sudden"; (b) that the condition which gave rise to the skull fracture was a "car truck accident"; and (c) that the accident was due to "probable" (probably) "hypoglycemic shock" of "unknown" duration. To us, the certificate is clear and speaks for itself.
It was undoubtedly the defendants' purpose and intention by placing Dr. Otwell on the stand to refute the causative factors of death as shown on the death certificate. The trial judge's statement as to the burden of proof undoubtedly had reference to his finding of fact that Dr. Otwell's testimony did not change or alter the aforementioned facts and therefore defendants had failed in their endeavor to show as a cause of death a condition other than what was reflected on the death certificate.
We do not wish to hinge our opinion upon a narrow and technical responsibility as to the corresponding burdens of proof because we are of the opinion that Dr. Otwell's testimony did not alter the reasons for death as assigned by him and *852 reflected on the death certificate. It is well established that in workmen's compensation cases, as in other civil cases, the plaintiff bears the burden of proving by a preponderance of evidence that there is a causal connection between the employment and the death or disability of the employee. Speculations, conjectures and possibilities are not sufficient to support a judgment. Knotts v. State Farm Mutual Automobile Insurance Company, 225 So.2d 222 (2d La. App., 1969). It is equally true that when a defendant asserts contributing causes other than the alleged compensable accident, the burden of such proof rests with the defendant. Jagneaux v. American Universal Insurance Co., 231 So.2d 601 (3d La.App., 1970).
In the case at bar we accept the trial judge's findings of fact and in doing so we rely as did the trial judge on the purported rebuttal testimony offered by defendants through Dr. Otwell, portions of which we quote:
"Q Now, have you had experience in treating diabetic conditions?
A Yes, I treat diabetic patients.
Q Have you ever seen a person alive with eleven per cent blood sugar?
A No, I haven't.
Q Now, I believe you completed the death certificate in this case, sir, didn't you?
A Yes, sir, I did.
Q Now, as I understand it, the injuries which you found to the body, and I am speaking about the traumatic injuries, would have been sufficient, in your opinion, to have been a cause of death if they were the only finding, is that correct?
A Yes, they would have.
* * * * * *
Q Now, is it likewise your opinion that the low blood sugar content in this individual, if the only finding, could likewise have been a cause of death?

A I don't know. I don't believe any one could say.
Q I am not asking you to decide which he died of. I am just saying if you found a dead person who had the low blood sugar results that you found in this case, would you have attributed death to that cause?
A With nothing else possible or nothing else evident that would have caused his death, (sic)[1]
Q Right.
A That would depend on how long he had been dead, because after death the blood sugar decreases in the blood at about, I think, on the average of five milligrams per cent per hour. In other words, if you had a blood sugar of eighty when you died, about an hour later, it would be somewhere around seventy-five. Now, that would vary from person to person but on the average it would be about five milligrams per cent.
Q Well, in this particular case you did suggest the low blood sugar content as a cause of death, didn't you, as one cause?
A It is possible.
Q It was listed on the death certificate as one of the possible causes of death, is that right?
A Yes, sir.
Q In other words, it is your opinion that this man could have died before he suffered the traumatic injuries in the motor vehicle collision?
*853 A It is a possibility but I don't know that.
Q It is not provable either way, is it?
A No, sir. I can't say if the man was alive or dead as far as the blood sugar goes before the accident."

(Emphasis ours.)
The above testimony of Dr. Otwell does not justify the conclusion that it was just as probable that Mr. Hull died as a result of his diabetes. The foundation upon which the doctor was interrogated was that the traumatic injuries in themselves were sufficient to cause death. He was particularly asked that if the low blood sugar content was the only finding, could it "likewise have been a cause of death" and the doctor answered "I don't know". Secondly, the doctor was asked if in this particular case would he suggest that the low blood sugar content was the cause of death and he answered "It is possible". But the significant statement is the last above quoted question and answer for the doctor clearly states that based on the blood sugar content he could not tell if Hull was dead or alive at the moment of impact. The import of his testimony is that the multiple skull fractures sustained by decedent was a certain cause of death; that the low blood sugar content was a possibility; but, based solely on the low blood sugar content he could not say whether or not Mr. Hull was dead or alive at the moment of impact.
To revert back to the death certificate itself, the doctor under cross examination by plaintiff's counsel reaffirmed his statement on the death certificate that death was caused by compound fracture of the skull, resulting from an accident, and the accident was probably caused by hypoglycemic shock. On this point he testified thusly:
"Q And that is why you listed on the death certificate that the death was caused, by immediate cause, you have compound fracture of skull, and thenthat's all right.
* * * * * *
Qas a condition, if any, which gave rise to the above cause stating the underlying cause as probable hypoglycemic shock.
A Right."
We find that the trial judge was correct when he concluded that the plaintiff had satisfactorily borne the burden of proof. While probabilities and possibilities are not enough, neither is the plaintiff required to prove his case beyond a reasonable doubt. The amount of proof required in any given case involves a question of degree. The answer thereto is one of reasonableness. It is for this reason that our courts have stated that the legal requirement for the burden of proof is satisfied when plaintiff has established to a reasonable certainty that the result complained of was occasioned by a particular act. Here we have a certainty of death as a result of multiple skull fractures on the one hand as compared with the possibility of death as a result of a diabetic condition on the other hand. Mr. Hull had a long history of momentarily losing consciousness and of recovering within three to ten minutes. Thus, the most reasonable and logical conclusion to be deduced from the record as a whole and Dr. Otwell's testimony in particular is that Mr. Hull experienced a hypoglycemic shock, lost control of his vehicle, then collided with an oncoming car, and died of traumatic injuries received in the accident.
Louisiana cases involving factual situations which we consider analogous to those of the case at bar are Ryland v. R. & P Construction Co., 19 So.2d 349 (2d La.App., 1944) and Flowers v. Williams-Rieves Lumber Co., 5 La.App. 49 (2d Cir., 1926).
Professor Wex S. Malone in Louisiana Workmen's Compensation Law and Practice considers at Chapter 9, § 198, the risk created by the physical peculiarity of an employee. In this section, the author discusses the employee who because of some physical infirmity "may be more subject *854 to accident than a normal employee" and propounds the question as to whether or not the risks which are attributable to such afflictions arise out of the claimant's employment. On this subject he states:
"For present purposes it is assumed that the worker has met with an ordinary traumatic accident, as by falling or burning himself, and that the consequences for which he is seeking compensation are the normal effects of such an accident. In such a case the employer may claim that the accident must be attributed to the affliction and not to the nature of the employment. This position was sometimes adopted in the earlier English and American decisions. A carpenter who was seized with an attack of epilepsy and fell thirty-nine feet to the ground was denied compensation by the California court,20 and in Massachusetts a
"20. "Brooker v. Industrial Acc. Comm. (1917) 176 Cal. 275, 168 P. 126, L.R.A. 1918F, 878."
worker who suffered lapses of memory and wandered into a swamp where he contracted pneumonia was similarly treated.21 There are other early decisions
"21. "Milliken's Case (1914) 216 Mass. 293, 103 N.E. 898, L.R.A.1916A, 337."
in accord,22 although the cases
"22. "For example, Cox v. Kansas City Refining Co. (1921) 108 Kan. 320, 195 P. 863 (epileptic fell against hot pipes; compensation denied)."
were never harmonious.23
"23. "For example, Rockford Hotel Co. v. Industrial Comm. (1921) 300 Ill. 87, 132 N.E. 759, 19 A.L.R. 80 (epileptic fell into bed of hot cinders; compensation allowed); Miller v. Beil (1921) 75 Ind.App. 13, 129 N.E. 493 (epileptic fell into open water tank; compensation allowed)."
In later years the rule has become established that an accident which would otherwise be compensable does not cease to arise out of the employment because it can be attributed in part to a physical infirmity of the employee. The usual explanation advanced in the modern cases is that the fall or blow is the direct proximate cause of the injury or death and that the existing susceptibility is only a remote factor.24 This may be
"24. "Ennis [Ervin] v. Industrial Comm. (1936) 364 Ill. 56, 4 N.E.2d 22; Connelly v. Samaritan Hospital (1932) 259 N.Y. 137, 181 N.E. 76."
true even though the conditions of the employment do not expose the employee to any special danger from falling.25.
"25. "Connelly v. Samaritan Hospital, supra (laundress suffered heart attack, fell and hit table; compensation allowed); Industrial Comm. v. Nelson (1933) 127 Ohio St. 41, 186 N.E. 735 (epileptic fell and crashed skull against base of machine)."
The rule applies a fortiori where the danger from falling is greater for the employee than for one not so employed, as where he is required to work at a considerable height from the ground or around fires or other dangers.26.
"26. "Reynolds v. Passaic Valley Sewerage Comm. (1943) 130 N.J.L. 437, 33 A.2d 595 (epileptic fell against stove)."
The liberal rule described above prevails in Louisiana according to two court of appeal decisions. In Ryland v. R & P Construction Company27. compensation
"27. "(La.App.2d Cir. 1944) 19 So.2d 349."
was allowed claimant, a night watchman, who was seized with an attack of epilepsy and fell into a fire which he had built to keep himself warm. A somewhat similar situation is found in Flowers v. William [Williams]-Rieves Lumber Company.28. Claimant was assisting
"28. (2d Cir. 1926) 5 La.App. 49."
a truck driver. He attempted to chew from a plug of tobacco handed him by the driver. Being unaccustomed to chewing tobacco, he became dizzy and fell from the truck. Compensation was allowed. In both these cases the court found that the physical disability or condition was not the proximate cause of *855 the injury. It is also noteworthy that both claimants were securely within the course of their employment, and recovery could be justified under the rule of the Kern case.29."
"29." See section 191, supra."
We have considered the cases of Schultz v. L. Mundet & Son, 146 So. 177 (La.Orl. App., 1933) and Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666 (1921) cited by defendants and consider the facts in each clearly distinguishable from those in the case at bar. In the instant case we have a violent accident inflicting the injuries which were in themselves sufficient to immediately cause his death. In Schultz the court found that the accident relied upon was "trivial" (146 So. 177, 178). In Haddad, on rehearing, the court could not conclude that the plaintiff had fallen out of a truck and had come to his death by being pressed against a ditch embankment. There were only minor bruises on the person of the decedent and the court there was not presented with a situation where the automobile accident alone would have inflicted injuries sufficient to cause Mr. Haddad's death.
We now turn our attention to the matter of funeral expenses. The trial judge awarded judgment in favor of the plaintiff in the amount of $600.00 for such expenses as authorized by L.R.S. 23:1210. In this respect, the trial judge erred because the plaintiff herein was judicially separated from the decedent and does not appear herein in any representative capacity of decedent's estate. Further, funeral arrangements were not made by her nor is she obligated in any way to pay the same. Under these circumstances she has no standing to demand or recover from the defendants such benefits. Books v. Keen & Woolf Oil Co., 9 La.App. 288, 120 So. 99 (2d La.App., 1928).
Defendants argue that the two minor children of decedent were only partially dependent upon him and that the provisions of L.R.S. 23:1231 should apply. In support of this argument defendants contend that plaintiff furnished the children with a residence (her own) and out of funds derived from her paid for supervision of the children while she worked. At the time of decedent's death he was under a court order to and had regularly contributed the sum of $100.00 per month for the support of his two children. This contribution represented slightly less than one-fourth of decedent's average monthly earnings of $450.00. Under these circumstances defendants submit that the children should be awarded the sum of $11.95 per week instead of $35.00 per week awarded by the trial judge. Defendants' sum is computed by taking 46¼% of his average weekly earnings of $47.89. This contention is without merit. Plaintiff testified that the $100.00 per month adequately and fully supported her two children. The items listed above which defendants contend rendered the children partially dependent upon decedent are not such contributions to the children as would cause them to also be dependent upon their mother. The record is amply clear that the $100.00 per month was devoted exclusively to and fully covered all expenses incidental to the rearing of these children. Inasmuch as decedent's wages at the time of his death were such that would authorize the maximum compensation payments to either himself or his dependents, his two children are entitled to receive collectively the sum of $35.00 per week. However, the trial judge did err in signing a judgment in favor of the plaintiff and against the defendants in the lump sum of $14,000.00. The judgment should be amended to provide for the payment to the children of the sum of $35.00 per week not to exceed 400 weeks.
The remaining issue for resolution is that of the plaintiff who answered this appeal seeking statutory penalties and attorney's fees for the alleged capricious action on the part of the defendants in not timely providing for payment of weekly *856 compensation payments to the children or the burial expenses incurred on behalf of defendant. L.R.S. 23:1201.2. On this point it will suffice to say that the actions of the defendants in this case are not so arbitrary and capricious as to render them liable under the statute. As a matter of fact (as evidenced by the dissent herein) serious issues of law and evaluation of evidence are presented to the extent that even this court finds itself divided.
Accordingly, for the above and foregoing reasons the judgment of the district court in favor of the plaintiff and against the defendants is affirmed insofar as it awards to the plaintiff for and on behalf of her minor children maximum compensation benefits; however, the judgment appealed from is amended in favor of the plaintiff and against the defendants, condemning the defendants to pay to the plaintiff for the use and benefit of the minor children the sum of $35.00 per week not to exceed 400 weeks, together with legal interest on each payment as it became or shall become due until paid; judgment in favor of the plaintiff and against the defendants in the amount of $600.00 for reasonable burial expenses is reversed and set aside; plaintiff's demand for statutory penalties and attorney's fees is denied. The costs of these proceedings are to be borne by defendants-appellants.
Affirmed in part reversed in part and rendered.
LANDRY, Judge (dissenting).
The majority have properly posed the issue that if decedent died of a diabetic condition no compensation benefits are payable herein, whereas, if decedent's demise was due to multiple skull fractures sustained while in a state of hypoglycemic shock, compensation benefits are due his dependents.
In my judgment the majority have erred in (1) holding in effect that the cause of death listed in a coroner's death certificate, issued pursuant to LSA-R.S. 33:1561, creates a presumption of death which must be overcame by one asserting a contrary cause, and (2) holding that the testimony of Dr. Otwell, viewed in conjunction with the recitations in the death certificate, establish that decedent died of injuries rather than hypoglycemic shock.
Prior to adoption of Act 151 of 1952, our jurisprudence was firmly settled to the effect that a coroner's report and death certificate was proof merely of death itself and was inadmissible to prove the cause of death. Beco v. People's Industrial Life Ins. Co. of Louisiana, 9 La.App. 371, 119 So. 281. Act 151 of 1952 amended and reenacted LSA-R.S. 33:1561 to provide that the cause of death listed by the coroner "shall be the legally accepted manner and mode by which the deceased came to his or her death and shall be the legally accepted cause of death." The amendment of Section 1561, above, resulting from adoption of Act 312 of 1966, made no change in the 1952 legislation insofar as concerns the effect that a coroner's death certificate bears to the cause of death. Despite the language of the 1952 and 1966 amendments of Section 1561, above, it has subsequently been held that such a certificate is proof of death only and not proof of the cause thereof. Brooks v. Washington National Life Insurance Company, La. App., 79 So.2d 653; Lee v. Aetna Life Insurance Company, La.App., 147 So.2d 703. In Fowler v. Connecticut Mut. Life Ins. Co., D.C., 1965, 38 F.R.D. 11, it was held that the statute in question has no effect upon the substantive rights of parties and consequently such a certificate binds only the bureau of vital statistics to accept as the legal cause of death the manner and mode of death given by the coroner thereon. With this proposition, I am in complete accord. In effect the majority have held that the death certificate creates a prima facie case as to cause of death. I disagree with this premise. It is a firmly established rule that in a compensation case, as in any other matter, the claimant *857 must prove every element of his claim by a preponderance of legal evidence. Evidence which establishes speculation, mere possibility, conjecture, and even unsupported probability of a claim, is not sufficient to support a judgment for compensation benefits. Hebert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286.
Neither do I find any support in the record for the apparent alternative majority view that the certificate, taken together with Dr. Otwell's testimony, makes out a case in favor of claimants.
In effect the majority find that Dr. Otwell's testimony establishes that the cause of death was multiple fractures sustained in the accident and that it is only possible that decedent may have died of hypoglycemic shock prior to the impact. I do not so view the coroner's testimony. In my judgment, the following testimony of Dr. Otwell indicates that it is impossible to determine whether death was accidental as a result of injuries or whether decedent died of hypoglycemic shock prior to the collision.
"Q Now, is it likewise your opinion that the low blood sugar content in this individual, if the only finding, could likewise have been a cause of death?
A I don't know. I don't believe any one could say.
Q I am not asking you to decide which he died of. I am just saying if you found a dead person who had the low blood sugar results that you found in this case, would you have attributed death to that cause?
A With nothing else possible or nothing else evidence that would have caused his death.
Q Right.
A That would depend on how long he had been dead, because after death the blood sugar decreases in the blood at about, I think, on the average of five milligrams per cent per hour. In other words, if you had a blood sugar of eighty when you died, about an hour later, it would be somewhere around seventy-five. Now, that would vary from person to person but on the average it would be about five milligrams per cent.
Q Well, in this particular case you did suggest the low blood sugar content as a cause of death, didn't you, as one cause?
A It is possible.
Q It was listed on the death certificates one of the possible causes of death, is that right?
A Yes, sir.
Q In other words, it is your opinion that this man could have died before he suffered the traumatic injuries in the motor vehicle collision?
A It is a possibility but I don't know that.
Q It is not provable either way, it is?
A No, sir. I can't say if the man was alive or dead as far as the blood sugar goes before the accident.
* * * * * *
Q So you were going to see whether he was drunk or not?
A That's right.
Q That occurred to you right off?
A That's right.
Q You had him out there and you put a syringe in him and took some blood from him and sent it on to the lab?
A To the Crime Lab.
Q There is no way to tell whether he was living or dead at the time of the accident, is there?
A In my opinion, it is impossible for me to say if this man was living or *858 dead before the accident. I don't know whether he was living or dead."
The majority lay great stress on the fact that the death certificate lists skull fracture as the immediate cause of death. Dr. Otwell explained, however, that this notation was made immediately upon returning to his office. He further explained that subsequently decedent's brother came to his office and furnished information concerning decedent's diabetes, whereupon Dr. Otwell added at the bottom of the certificate the information concerning decedent's diabetic condition. The import of the Coroner's testimony is that had he known all the facts and circumstances upon making his report, he could not have determined precisely what had caused this particular demise.
Death or disability resulting from natural causes, not precipitated or aggravated by the circumstances of decedent's employment, is not compensable. The circumstances most frequently giving rise to compensation claims based on death or disability due to natural causes is heart attack. The jurisprudence establishes that in such instances claimant must prove causal connection between an employment activity or the circumstances of employment and the death or disability resulting from a heart condition. Landry v. Park Wood Products, Inc., La.App., 201 So.2d 306; Prater v. Liberty Mutual Insurance Company et al., La.App., 182 So.2d 805; Prejean v. Bituminous Casualty Corporation, La.App., 125 So.2d 221. If a causal link or connection is shown between the employee's duties and the onset of a heart attack or aggravation of an existing heart condition, a compensable accident within the ambit of the workmen's compensation statute is deemed to have occurred. For example, in Turner v. Howard Motors, Inc., La.App., 192 So.2d 205, a mechanic who died of a heart attack shortly after exerting himself in performing duties on a day when the temperature ranged from 85 to 91 degrees, and humidity was approximately 85 per cent, was deemed to have suffered a compensable accident where the medical evidence showed causal connection between such labors and the fatal heart attack.
The rationable of the physical breakdown line of cases in that where strenuous exertion or the conditions of employment are such as to cause or contribute to a physical breakdown or accelerate a pre-existing condition, the statutory requirement of an "accident" is met. Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625, and cases therein cited.
It is equally well settled that if the circumstances of employment do not contribute to the occurrence of a physical breakdown, or aggravate an existing disease or condition, disability resulting from physical breakdown or disease is not compensable. Landry v. Park Wood Products, Inc., La.App., 201 So.2d 306.
The trial court in this instance held that because defendants contended in their answer that decedent died of hypoglycemic shock, defendants bore the burden of proof. This ruling was erroneous. A similar contention was made and rejected in Schultz v. L. Mundet & Son, La.App., 146 So. 177.
Here it is equally probable that decedent died of hypoglycemic shock prior to the impact of the vehicles as it is that he died of the head injuries sustained in the collision. Plaintiff at bar has shown only a possibility that decedent may have died of the injuries sustained in the accident. This is not sufficient proof. Hebert v. Your Food Processing & Warehouse, Inc., above.
In an analogous case, in which decedent suffering from a tumor fell from a truck and was run over, the court held that plaintiff had failed to establish death from an accident arising from decedent's employment. Haddad v. Commercial Motor Truck Co., 150 La. 327, 90 So. 666.
I respectfully dissent.

*859 On Application for Rehearing
PER CURIAM.
The defendants have asked for a rehearing and have cited some twelve reasons in support thereof. Save one exception, the errors cited are generally the same as those complained of in the trial judge's decision which we have endeavored to answer in the principal opinion. The one exception is that defendants contend that we erred as a matter of law in holding that the death certificate is proof of anything other than the fact of death and cite Lee v. Aetna Life Insurance Company, 147 So.2d 703, 706 (1st La.App., 1966) in which we stated:
"The Certificate of Death and the Coroner's Report, if same be accepted as such, are limited only to the proof of death itself and are not admissible for the purpose of proving the cause thereof. 46 C.J.S. Insurance § 1337; Pecoraro v. New York Life Insurance Company, La. App., 141 So. 501; Webster v. New York Life Insurance Company, 160 La. 854, 107 So. 599; Brooks v. Washington National Life Insurance Company, La.App., 79 So. 2d 653."
In Brooks v. Washington National Life Insurance Company, 79 So.2d 653, 656 (La. App.) the court stated:
"There is no statute of which we are cognizant providing that a certificate issued by a register of deaths shall be admissible in evidence in the courts of this State as prima facie proof of the validity of the facts recorded in the official death record."
It is obvious to us that in both the Lee and the Brooks cases, this court as well as the Fourth Circuit failed to consider the amendment to L.R.S. 33:1561 by Act No. 51 of 1952. The said statute before the 1952 amendment read as follows:
"The coroner shall hold an inquest or make an investigation in all cases of sudden death, death due to unknown causes, death without attending physician or other remedial treatments, or death in which there is suspicion as to the cause, with the right to order autopsies in any cases, within his discretion."
It is obvious to us that the Legislature did intend that a death certificate can be accepted in court as the "legally accepted cause of death." This does not preclude an adverse party in calling upon a coroner to express his views either in accord or contrary to the death certificate in which case his testimony at the time of the trial shall prevail. He may even be called under cross examination by the party objecting to the information on the death certificate.
Defendants called Dr. Otwell and his testimony is in the record and the majority of this court has determined that his testimony did not alter or vary the death certificate and that the legal cause of death of Mr. Hull was a compound fracture of the skull which was the result of the automobile accident.
The application for a rehearing is denied.
LANDRY, J., dissents from refusal to grant a rehearing.
NOTES
[1] It is obvious that this is a question in response to a question and should have been punctuated with a "?".