159 So.2d 395 (1963)
Katie C. YOUNG, Plaintiff-Appellee,
v.
FIRST NATIONAL LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 10056.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
*396 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellant.
Coen & Pliner, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
GLADNEY, Judge.
Katie C. Young brought this suit against the First National Insurance Company, the insurer of her husband, Sam Young, for accidental death benefits under Policy No. 2513061, and double indemnity benefits for accidental death under Policy No. 2513062. Plaintiff also seeks recovery of penalties and attorney's fees under LSA-R.S. 22:657(B). Defendant answered and admitted that it issued both policies, but affirmatively pleaded suicide[1] as a defense and tendered return of all premiums paid.[2] After trial, judgment was rendered in favor of plaintiff for the amount allegedly due under the policies but penalties and attorney's fees were denied. Both parties have appealed.
Sam Young met his death on March 23, 1962, while performing his duties at a service station. He was working alone in a back room in which the owner kept a loaded revolver on a shelf about five feet in height. In some manner not discernible from the evidence, Young was shot by this revolver. It had no safety device, but as a precaution against accidental discharge it was kept with the hammer always set upon an empty chamber. Thus, the first pull of the trigger would only produce a click as the cylinder revolved into firing position. The bullet that struck Young entered his left side and angled toward the right side of his back. The deceased was afflicted with a crippled left arm and he could have intentionally fired the revolver only with his right hand. Upon hearing the shot, the proprietor of the station entered the room just before Young died, and in time to hear Young direct him to call a doctor. No other statement was made by the deceased.
The sole issue is whether or not Young died accidentally. As the plea of suicide presents a special defense the burden of proving death from suicide by a preponderance of the evidence, is with the defendant insurer. To accomplish this the defendant *397 sought to show that the deceased possessed suicidal tendencies and a motive for taking his own life. Evidence was adduced of Young's commitment to the Central Louisiana State Hospital on account of mental illness, his reputation as a heavy drinker, his worry over financial difficulties, and concern about an unsettled automobile accident. In rebuttal counsel for appellant-appellee, Katie C. Young, introduced testimony to show that Young was in good spirits prior to his death and was interested in business plans for his own future.
During the course of the trial certain evidence was properly ruled inadmissible. After first allowing Dr. N. L. Mauroner, deputy coroner, to testify that the gun was intentionally fired, the trial judge reversed his ruling by limiting the effect of the evidence to establish the fact of death. This ruling finds legal support in Brooks v. Washington National Life Insurance Company, La.App., 79 So.2d 653 (Orl.1955).
The desire to live and be free from death is the natural disposition of every normal individual and so generally recognized that a legal presumption is held to exist against self destruction or suicide. As a consequence when suicide is offered as a defense to a suit upon an insurance policy the burden of proof rests heavily upon the insurer to establish the occurrence of the unnatural death to the exclusion of every other reasonable hypothesis. Webster v. New York Life Insurance Company, 160 La. 854, 107 So. 599 (1926); Bayles v. Jefferson Standard Life Insurance Company, La.App., 148 So. 465 (2d Cir. 1933); and Oubre v. Mutual Life Insurance Company of New York, La.App., 21 So.2d 191 (Orl.1945). In the last cited case a bookkeeper who was short in his accounts confessed to the shortage and offered to make restitution by transferring all of his possessions, his bank account, automobile and the equity in his home. While waiting to sign the necessary papers in the office of his employer's attorney, he declined a chair and sat in a window from which he either jumped or fell to his death at a time when no one was looking. In finding the evidence insufficient to establish proof of death by suicide, the court commented:
"The long and short of it is that while we believe there is a possibility, yes, a probability that Oubre jumped out of the window, we are also convinced that the evidence does not demonstrate this to be the case beyond a reasonable doubt."
We have carefully studied the impressive argument by counsel for the defendant that the angle of the bullet's path indicates that the revolver could not have been accidentally fired. This postulation is unsatisfactory in that in our opinion it fails to exclude every other reasonable hypothesis. The mere fact that Young on former occasions had indicated a suicidal tendency and had a possible motive for taking his own life, in the absence of stronger additional evidence is insufficient to overcome the recognized presumption against suicide.
Accordingly, we have concluded that the defendant has failed to sustain its defense by a preponderance of the evidence by excluding every other reasonable hypothesis of the cause of death. We are in accord with the ruling of the trial court on this point. Likewise, we agree that the ruling of the judge a quo denying plaintiff's claim for penalties and attorney's fees is correct. The record clearly indicates that the defense of suicide was advanced in good faith and for just cause.
The judgment is affirmed, at appellant's cost.
NOTES
[1] Policy No. 2513062 provides: "This accidental Death Benefit does not cover self destruction, sane or insane * * *"
[2] Policy No. 2513062 provides: "If the Insured shall die by his own hands, whether sane or insane, the Company's liability shall be limited to the amount of the premiums paid on Policy."