**Louise K. SCHLEUNES,**
**Plaintiff-Appellee,**

v.

**AMERICAN CASUALTY COMPANY**
**OF READING, PA.,**
**Defendant-Appellant.**

**No. 74–2260.**

United States Court of Appeals, Fifth Circuit.

March 15, 1976.

Francis G. Weller, New Orleans, La., for defendant-appellant.

James D. Maxwell, Trial Atty., Kenner, La., Lawrence D. Wiedemann, Trial Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This is a suit brought by the mother of a deceased insured for the recovery of accidental death benefits on a group life insurance policy. The defendant insurer maintained that the insured, Ronald Schleunes, committed suicide. The jury returned a verdict for the plaintiff. Defendant argues thirteen points on appeal. We do not fully discuss all these arguments. Instead, we concentrate on those issues likely to arise at the second trial. A new trial is required due to error by the trial judge in not allowing defendant to demonstrate the defectiveness in the rifle, and because of improper closing jury arguments by the plaintiff's counsel. We also discuss the burden of proof issue and the evidentiary weight to be accorded a death certificate. Because of the trial errors, we reverse and remand for a new trial.

## FACTS

On the afternoon of February 9, 1971, Ronald Schleunes was found dead in his bedroom in his mother's home. He had been killed by a bullet from a .22 caliber rifle. He was twenty-three years old. There were no witnesses to the shooting and no suicide note was found. The rifle was a fifty year old single shot bolt action model. According to Mrs. Schleunes, mother of the deceased, the rifle had been loaded with one bullet three months prior to the shooting. This was done in response to an obscene phone call, but she never told her son Ronald about the incident. Apparently the rifle had been kept in a hall closet and had not been fired for two and one-half years.

On the same day as the shooting, Ronald's twin brother Donald returned home from active service with the Air Force. It was Donald who first discovered his brother's body, but he was only able to open the door to Ronald's room wide enough to see inside. A neighbor, Gay Greaves, was the first person to enter the bedroom. Greaves removed the rifle which was cradled in Ronald's arms. He then pulled the body away from the door. By the time police arrived, the body had been moved from its original position. The police report classified the death as an apparent suicide.

At the time of his death, Ronald Schleunes was working the night shift for Delta Airlines at the New Orleans International Airport. As a Delta employee, Ronald was eligible for accidental death benefits amounting to $87,500 on a group life insurance policy issued by defendant, American Casualty Company of Reading, Pennsylvania. One of the policy's exclusions, however, provided no coverage for any loss caused or resulting from suicide while sane or insane, or for intentionally self-inflicted injury. Ronald's mother was the designated beneficiary and the plaintiff in this lawsuit. When plaintiff filed a claim for the benefits devolving to her as beneficiary, the company denied the claim on the ground death was by suicide.

Plaintiff filed suit in state court for the recovery of the accidental death benefits, as well as penalties and attorney's fees. The case was removed to federal district court for the Eastern District of Louisiana as a diversity case, and tried before a jury. *See* 28 U.S.C.A. § 1441(a). Defendant moved for a directed verdict at the conclusion of plaintiff's case, and again upon conclusion of all the evidence. Both motions were denied as to the suicide issue, but granted on the issue of penalties and attorney's fees. The jury returned a verdict for the plaintiff, finding death to have been accidental. Defendant's motion for judgment notwithstanding the verdict, or alternatively, for a new trial, was denied. This appeal followed.

## TRIAL ERRORS

The defendant alleges reversible error both in the trial court's refusal to permit a demonstration on how the rifle could be fired, and in the plaintiff attorney's closing argument. The combination of these two errors entitles defendant to a new trial. Although defendant asserts that the trial court should have granted its motion for directed verdict or its subsequent motion for judgment notwithstanding the verdict, we perceive no error under the principles announced in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc).

### Rifle Demonstration

■ The trial judge refused to permit the defendant an opportunity to demonstrate that the .22 caliber rifle which killed Ronald Schleunes could not have been fired unless certain steps were taken, steps inconsistent with an accidental firing of the rifle. Such a demonstration would have resolved the conflicting testimony of opposing experts. It should have been allowed.

Both parties agreed the rifle was defective and could not be fired in the normal manner of a .22 caliber rifle in proper working order. The normal procedure entails opening the breech, insert-

ing a shell, closing the breech and pulling the trigger.

According to the plaintiff's presentation, the rifle could be accidentally discharged by striking the bolt head against an object, once the bolt had been pulled back and the rifle loaded. It was not necessary to depress the trigger. Sergeant Alex Vega of the New Orleans Police Department testified for the plaintiff. He was considered an expert on ballistics and the general subject of weapons, although not an authority on the repair and functioning of guns. He testified that due to the defect, the rifle could not be discharged by pulling the trigger. It could be fired, however, by striking the bolt head or plunger. He examined the rifle shortly after the shooting and test-fired the rifle with a blank cartridge some months later. Another witness, Ray Heard—an expert criminologist—testified that the rifle could be discharged by striking the bolt head, without depressing the trigger.

To counter this, defendant called as an expert witness Gene Clark, a professional gunsmith. According to Clark, the rifle could not be discharged by just striking the bolt head. He testified that to fire the rifle, two more steps were required than plaintiff's experts said were necessary: (1) depress and release the trigger, (2) push the bolt head forward while depressing the trigger. Once these two steps were completed, the rifle could then be discharged by striking the bolt head.

On four separate occasions, defense counsel sought, unsuccessfully, to demonstrate how these two additional steps were needed to fire the gun. At least one of the attempted presentations occurred during the cross-examination of one of plaintiff's experts. Defendant offered several variations in the manner of demonstration including a demonstration outside the courtroom with court-appointed overseers. Plaintiff did not object to the proposed demonstration.

Whether Ronald Schleunes' death was accidental or by suicide was the sole issue in this lawsuit. He killed himself with the gun. There was no issue on that point. The contested issue was whether he did it on purpose, or accidentally. If the rifle could not be discharged accidentally, the likelihood of intentional death would be measurably increased. Every indication is that a demonstration would resolve the conflicting testimony of opposing experts. Both parties agreed the rifle was in the same condition as it was the day Ronald Schleunes was shot. There was no problem with dissimilarity in the rifle that might produce an artificially different result from what occurred the day of the shooting.

The rifle demonstration would have been proper to resolve the conflict in the expert testimony. The demonstration was highly relevant to the determination of accidental death. In related cases courts have allowed this type of evidence. *Cf.* C. McCormick, *Handbook of the Law of Evidence* § 182, at 390–391 (1954) (bodily demonstrations and other experiments in court); *Raymond v. Riegel Textile Corp.*, 484 F.2d 1025, 1027 n.8 (1st Cir. 1973) (exhibition of burning fabric); *Beisel v. Monessen S. W. Ry. Co.*, 121 F.Supp. 604, 606 (W.D.Pa.1954), *aff'd*, 218 F.2d 273 (3rd Cir. 1955) (demonstration of a model hand brake). In cases involving questions of suicide, the courts generally admit evidence pertaining to the manner of firing the weapon. *See* Annot., 63 A.L.R.2d 1150 (1959). How a gun could or could not be fired is one such instance. *See Kansas City Life Ins. Co. v. Bowman*, 102 F.2d 510, 511 (9th Cir. 1939).

Although this type of demonstration rests within the sound discretion of the trial court which will not be overturned absent abuse of discretion, *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378, 382 (5th Cir. 1969), the apparently easy manner of resolving the crucial conflicting testimony of witnesses militates for a mechanical demonstration. The district court retains discretion to determine the kind of demonstration and the manner of bringing the results before the jury. Our decision is

only that a court-supervised demonstration should have been allowed.

## Jury Argument

■ Plaintiff counsel's closing argument to the jury constituted prejudicial error. Appealing to the religious instincts of the jurors, counsel argued that if the jurors found that Ronald Schleunes committed suicide, they would be condemning the boy to eternal damnation. Defendant did not object to these closing statements. To reverse, plain error must be found. *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975).

■ Counsel is generally allowed wide latitude in cross-examination and jury argument. These matters traditionally lie within the trial court's discretion. *See Shaw Warehouse Co. v. Southern Ry. Co.*, 288 F.2d 759, 777 (5th Cir. 1961), *cert. denied*, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962). Counsel in this case, however, placed upon the jury's shoulders the divine responsibility of determining whether Ronald Schleunes was going to heaven or hell. If the jury returned a verdict for defendant—suicide—then Ronald would be denied an after life in heaven and be deprived of his family's company in the hereafter.

Plaintiff's attempts to justify the remarks as pointing to Ronald's religion for a reason he would not commit suicide fall short of the mark. This case involved the death of a young man, a death which defendant claims was intentionally self-inflicted. Opposing the insurance company was the mother of the deceased. She claimed her son was shot accidentally. Without doubt, the emotional element present in such a trial cannot be overlooked. Counsel's statement placed an undue burden on the jury and only served to prejudice the jury in a case already highly charged with emotionalism. *Cf. Edwards v. Sears, Roebuck & Co., supra; Theriot v. Mercer*, 262 F.2d 754 (5th Cir.), *cert. denied*, 359 U.S. 983, 79 S.Ct. 941, 3 L.Ed.2d 933 (1959); *F. W. Woolworth Co. v. Wilson*, 74 F.2d 439 (5th Cir. 1934). Placing these religious overtones on the question of insurance liability improperly prejudiced defendant's case by forcing the jury to decide more than the question of suicide or accidental death.

## OTHER POINTS ON APPEAL

### Burden of Proof

The trial judge charged the jury that defendant carried the burden of proving death by suicide on an accidental death policy. To sustain its theory of suicide, the court charged, defendant must overcome the presumption against suicide by a "preponderance of the evidence consistent with the theory of suicide . . . and inconsistent with any reasonable hypothesis of death by accident." The judge did not, however, alter the normal burdens for he also charged on this accident policy that "plaintiff has the burden of proving that death resulted from accidental means, while the insurer has the burden of proving the defense of suicide." On appeal, defendant contends this charge was error.

■ Plaintiff on an accidental death policy, or double indemnity for accidental death, must prove that death resulted by accidental means. With a life policy, plaintiff need only prove that death in fact occurred. *See generally* 14 G. Couch, *Cyclopedia of Insurance Law* §§ 49:659, 49:667–668, at 164–165, 168–169 (Anderson ed. 1965). The defendant on the life policy must come forward with a defense to avoid payment once death is proved. Theoretically, on a recovery for accident a plaintiff would have to negate suicide, i. e., intentional death, in order to prove accidental death. A presumption of unintentional death in Louisiana law, however, brings the two kinds of policies in line, insofar as a defendant's burden is concerned.

■ Louisiana provides that on an accidental death policy, where it is uncertain whether death occurred accidentally or intentionally, the law will presume death was nonintentional. As early as *Canal-Commercial Trust & Savings Bank v. Employers' Liability Assur. Corp.*, 155 La. 720, 99 So. 542 (1924), the Louisiana courts recognized this.

The correct rule, and the one to which we prefer to adhere, is . . . :

"While in an action on an accident policy the burden is on the plaintiff to show that death was caused by accident, yet where it is doubtful from the evidence whether death was caused by an accident or by suicide, a presumption arises that an accident, and not suicide, was the cause of the death.

\* \* \* \* \* \*

"The presumption against suicide will stand and be decisive of the case until overcome by testimony which shall outweigh the presumption."

99 So. at 545. *See New York Life Ins. Co. v. Trimble,* 69 F.2d 849, 850 (5th Cir.), *cert. denied,* 293 U.S. 561, 55 S.Ct. 72, 79 L.Ed. 661 (1934); *Webster v. New York Life Ins. Co.,* 160 La. 854, 107 So. 599, 602 (1926); *Faulk v. Mutual Life Ins. Co.,* 160 La. 529, 107 So. 395, 401 (1926). Ronald Schleunes was killed by a bullet to the head. That his cause of death was external and violent is demonstrated by the nature of the injury itself. There were no witnesses. No suicide note was found. The evidence was all circumstantial. Although the circumstances excluded the notion that death had resulted by the hand of another, it was doubtful from the evidence whether death was intentional or accidental.

■ Once plaintiff presented evidence showing external, violent death, under circumstances leaving suicide in doubt, the state's presumption against suicide required defendant to overcome the presumption by establishing suicide to the exclusion of every other reasonable hypothesis. *See Heiman v. Pan American Life Ins. Co.,* 183 La. 1045, 165 So. 195, 196 (1936) (double indemnity for accidental death); *Andrews v. Provident Life & Accident Ins. Co.,* 179 La. 77, 153 So. 26, 26–27 (1934) (accident insurance policy); *Young v. First Nat'l Life Ins. Co.,* 159 So.2d 395, 397 (La.Ct.App.1963) (acciden-

tal death policy). This Circuit has followed this precedent in Louisiana diversity suits. *See New York Life Ins. Co. v. Trimble, supra,* 69 F.2d at 850. Defendant's argument for a standard on accidental death actions different from the court's charge which was concededly a proper standard for a life policy recovery, must be rejected. Louisiana courts have failed to make such a distinction. *See Webster v. New York Life Ins. Co., supra,* 160 La. 854, 107 So. 599, 602–603 (1926) (life policy with double indemnity for accidental death); *Oubre v. Mutual Life Ins. Co. of New York,* 21 So.2d 191, 192 (La.Ct.App.1945); *Bayles v. Jefferson Std. Life Ins. Co.,* 148 So. 465, 468 (La.Ct.App.1933) (life policy with double indemnity recovery for accidental death). Finally, *New York Life Ins. Co. v. Prejean,* 149 F.2d 114 (5th Cir. 1945) is not to the contrary. There the issue only involved a verdict on the straight life claim, no appeal having been taken on the double recovery.

There was no error in the judge's charge to the jury.

### Death Certificate

Both plaintiff and defendant offered the death certificate into evidence. The certificate listed the cause of death as suicide. Defendant asked the court to charge the jury that the certificate created a presumption of death by suicide. On plaintiff's objection, the court correctly refused.

The death certificate was admitted pursuant to La.Rev.Stats. ch. 33:1561, which provides in part:

The cause of death, the manner or mode in which the death occurred, as rendered by the coroner and incorporated in the death certificate . . . shall be the legally accepted manner and mode . . . and shall be the legally accepted cause of death.

This statute was passed in 1952 as an amendment to a prior Act.[1] Louisiana

---

1. Prior to 1952, the statute read as follows:

Duty to hold inquest; autopsies

The coroner shall hold an inquest or make an investigation in all cases of sudden death, death due to unknown causes, death without

attending physician or other remedial treatments, or death in which there is suspicion as to the cause, with the right to order autopsies in any cases, within his discretion. La.Rev.Stats. ch. 33, § 1561.

Acts 1952, No. 151, § 2. Minor changes were added in 1966. Louisiana Acts 1966, No. 312, § 1. Cases decided prior to the 1952 amendment uniformly held that the death certificate could be admitted to show fact of death, but not cause of death. *See, e. g., Heiman v. Pan American Life Ins. Co., supra,* 183 La. 1045, 165 So. 195 (1936); *Clay v. Liberty Indust. Life Ins. Co.,* 157 So. 838 (La.Ct. App.1934); *Bayles v. Jefferson Std. Life Ins. Co., supra,* 148 So. 465 (La.Ct.App. 1933).

Defendant argues that the 1952 amendment changed this precedent and cites *Hull v. Liberty Mut. Ins. Co.,* 236 So.2d 847 (La.Ct.App.), *cert. denied,* 256 La. 862, 239 So.2d 361 (1970). *Hull* was a workmen's compensation suit. The court stated that the certificate admitted under the statute raised a presumption of the cause of death. One judge dissented, arguing the certificate could not be offered to prove cause of death. 236 So.2d at 856. Other decisions, not suits on insurance policies where a question of suicide was involved, admitted the certificate to prove only the fact of death. *See Lee v. Aetna Life Ins. Co.,* 147 So.2d 703 (La.Ct.App.1962) (question of death by accidental means or by heart attack); *Brooks v. Washington Nat'l Life Ins. Co.,* 79 So.2d 653 (La.Ct.App.1955) (accidental death or provoked by deceased). There seems to be no decision by the Supreme Court of Louisiana directly interpreting

the 1952 and 1966 amendments. *Hull* was decided by one of the state's four appellate courts. This authority is limited in light of the legion of pre-1952 cases.

It is unclear from the statute whether the legislature intended to overrule the long line of precedent prior to the 1952 amendment. In *Fowler v. Connecticut Mut. Life Ins. Co.,* 38 F.R.D. 11 (W.D.La. 1965), a federal district court sitting in Louisiana determined such was not the legislature's intent. 38 F.R.D. at 13 n. 5.[2] *Fowler,* like the instant case, involved a suicide defense to a claim for insurance proceeds. The court recognized the present language of the statute and held the certificate could be used only to prove fact of death. 38 F.R.D. at 14. *Fowler* was not cited by the court in *Hull.* *But see Hull, supra,* 236 So.2d at 856 (Landry, J. dissenting) (agreeing with *Fowler*). *See also Young v. First Nat'l Life Ins. Co., supra,* 159 So.2d 395, 397 (La.Ct.App.1963) involving suicide defense against double indemnity recovery, and not cited in *Hull.*

■ We find the opinion in *Fowler,* together with the action of the trial court in this case, to be persuasive as to the Louisiana law. The trial court was correct in admitting the certificate like other evidence, to be used by the jury as it saw fit without presumptive correctness as to the cause of death. If this were not so, the strong state policy pre-

**2.** In *Fowler,* the court spoke to the legislative intent behind 33:1561:

[A]s plaintiff points out, LSA–R.S. 33:1561, as amended in 1952, details the duties of the coroner to hold inquests, examinations, investigations and autopsies in all cases of sudden or violent deaths, determine whether they be due to accident, suicide or homicide, and note this information on the death certificate furnished the Bureau of Vital Statistics of the Louisiana Board of Health. Neither have we been cited to nor are we aware of any authority for the interpretation placed upon this statute by defendant. It can scarcely be gainsaid that the legislative intent of this somewhat inartistically drawn statute was to detail the ministerial duties of the parish coroner.[5]

[5] According to a symposium discussing the Louisiana Legislation of 1952 in Vol. XIII of

the Louisiana Law Review, page 102, section 1561 was amended at the instance of a group of coroners in order to modernize the former provisions "pertaining to duties and compensations of coroners." The obvious intent of the provision in issue was to make the coroner's decision as to cause of death conclusive upon the Bureau of Vital Statistics of the Board of Health. Thus the bureau has no authority to change or alter the death certificate except upon court order.

Moreover, the interpretation urged by defendant would have had the effect of legislatively overruling a long line of jurisprudence, which in fact has remained uniform since the statute's enactment. (Footnote 6 omitted).

38 F.R.D. at 13.

suming accidental death over suicide would be thwarted. Moreover, the Louisiana statute lacks the clarity evident in other statutes where the death certificate can be offered to prove more than the fact of death. *See Charleston Nat'l Bank v. Hennessy*, 404 F.2d 539, 541–542 (5th Cir. 1968) (Florida); *Shell v. Parrish*, 448 F.2d 528, 530–531 (6th Cir. 1971) (Tennessee).

### Points Not Reached

Defendant's following points on appeal are not reached: improper jury comments by trial judge referring to the consideration of penalties and attorney's fees after a directed verdict had been granted on those issues; suppression of cross-examination; allowing improper recall of rebuttal witnesses; calling of witness not listed on pretrial order; use of incompetent evidence to buttress expert testimony; other errors in plaintiff counsel's final argument. Believing these issues not likely to arise on retrial, further discussion is not warranted.

Reversed and remanded.