This is a suit under the Workmen's Compensation Act of this State, No. 20 of 1914, as amended. There is no dispute over the facts and the lower Court has stated them as follows:
"Defendant owned and operated power machinery, motor vehicles, gasoline motors and other machinery to excavate ditches or trenches in which to lay sewer pipes and to refill the same. This work was being carried on, at the time of the accident on February 11, 1943, in the residence portion of the Town of Pineville, from 7 a.m. to 5 p.m. approximately.
"Plaintiff was employed as a night watchman and began his duties at from 5 to 7 o'clock in the afternoon. They lasted until approximately 7 o'clock in the morning, when he was usually relieved by a negro who fired the pot to heat the tar. Plaintiff was not required to operate any kind of machinery. His duties were solely those of a night watchman to see that the property of defendant, including the machinery, was not molested or disturbed.
"Plaintiff is an epileptic, and from time to time for about twenty years he has suffered nervous seizures or nervous disturbances which caused him to lose consciousness. On February 11, 1943, he came on duty at the usual time. The night was cold. He found that the day employees had built a fire, which plaintiff says he kept going in order that he might warm himself.
"About 5:30 a.m., while plaintiff was warming himself at the fire, he suffered one of these nervous seizures or epileptic attacks and when he regained consciousness, he found both of his feet had been badly burned in the fire, and the purpose of this suit is to recover compensation from his employer and his employer's insurer for that injury.
"Plaintiff alleges that defendant was engaged in a dangerous occupation and that he was injured `while in the course of his duties and employment.' Defendant alleges that plaintiff's duties were purely and simply those of a night watchman, and were entirely of a nonhazardous nature and that, therefore, the injury sustained did not come under the Workmen's Compensation Act."
The lower Court found it unnecessary to pass on the question of the hazardous nature of plaintiff's employment and rejected his demands for the assigned reasons that the duties of plaintiff, if they were of a hazardous nature, were not of such a nature as to cause the dormant disease with which he was suffering to become active or virulent, thereby bringing on or superinducing the nervous seizure he suffered when he fell into the fire. Plaintiff is prosecuting this appeal from the judgment of the lower Court.
It is our opinion the lower Court decided the case on an issue which is not decisive of the case at bar and not an issue in the case. The issue which is decisive in this case, under the jurisprudence of this State, is whether or not plaintiff's duties were entirely of a nonhazardous nature in a nonhazardous part of defendant's business. Defendant was engaged in a hazardous occupation or business and plaintiff was at the time he was injured performing duties for which he was employed. The injuries have left him totally and permanently disabled for the performance of any work of a reasonable character. *Page 351 
There is no dispute over the wages plaintiff was receiving and he was injured in an accident which arose out of and in the course of his employment. The very nature of his duties caused him to be exposed to the elements and the night was extremely cold, necessitating the keeping of a fire to prevent freezing. In doing so, plaintiff was protecting his employer as well as himself for if he had been injured by the freezing of some member of his body while on duty, it is clear it would have been an accident arising out of and in the course of his employment. Plaintiff's duties, as sworn to by him, were to gather up the tools, put them all in one place, and to keep a watch over everything until the day employees came to work; to look out for trespassers and to prevent any one from interfering with the property. One of the partners of defendant company testified that plaintiff's duties were, "Well, he was supposed to see that everything was kept intact around the work, to see that nobody didn't get away with it, steal our stuff or misplace it, to see that it was cared for until we came in next morning for work."
There could be no question about plaintiff's duties being of a hazardous nature if the machinery used by defendant operated at night as well as in the daytime, but because there was no actual operation going on while plaintiff was on the job, defendant contends his work was not of a hazardous nature and was entirely nonhazardous and relies on the cases of, Horton v. Western Union Tel. Co., La.App., 200 So. 44; Gray v. Tremont Lumber Co., La.App., 185 So. 314; Rayburn v. De Moss, 194 La. 175,193 So. 579; Dewey v. Lutcher-Moore Lumber Co., 151 La. 672, 92 So. 273, 274, to sustain its position. Without discussing in detail any of the cited cases, it is clear that the facts of those cases are not similar to those in the case at bar. In each of them plaintiff was not required to be near any part of the business of his employer that was hazardous. In each, although defendant's business was classed as hazardous by the Compensation Act, plaintiff was engaged in a nonhazardous work in a nonhazardous part of the defendant's business which was apart from the hazardous features of the business, and we seriously doubt if that can be said of plaintiff's duties in the case at bar.
In the case of Dewey v. Lutcher-Moore Lumber Co., supra, the Supreme Court said: "The conducting of a logging camp (the camp being nothing more than the quarters for those engaged in logging), although part of the logging business, is not hazardous, and therefore one employed to perform and engaged in performing services in such a camp is not performing them in a hazardous occupation. It cannot be even said that the work of a scavenger is hazardous, although performed in such a place, but we think that it is the occupation in which the person is employed to perform the service, rather than his particular duties, that determines the question."
The only thing the Court could mean by that statement is that although the work of a scavenger is not in itself hazardous, if the place where the work is performed is in a hazardous part of the business, it comes under the Compensation Law. The work of a night watchman might not be hazardous when performed in a nonhazardous part of a business, but when done in the hazardous part of the business, it is classed as hazardous under the law. Defendant's business was hazardous because of the machinery used in it and the plaintiff's duties were to look after and protect this machinery, tools, oil and gas used in operating it and to see that it was all there and in place when morning came. The fact that the machinery was not in operation during the hours he worked did not change the nature of defendant's business during those hours. Defendant's business was hazardous both night and day and plaintiff was employed to work in that hazardous business. Under the ruling of the Supreme Court above quoted, it is immaterial whether plaintiff's work was in itself hazardous or not.
In Gray v. Tremont Lumber Co., supra [185 So. 315], we said: "But we know of no case of recovery by an injured employee wherein it was shown that in the discharge of his duties he was not required to be near or have contact with the hazardous phases of his employer's business, and where, as in this case, his duties were wholly non-hazardous and he was stricken while in the performance of such non-hazardous duties."
To this statement we might have added but where his duties required him to be near or have contact with the hazardous phases of his employer's business, he should recover.
It is our opinion plaintiff is entitled to recover compensation for the injuries he received for he was injured in an accident *Page 352 
while performing the duties he was employed to perform. The nervous attack which rendered him unconscious was not the proximate cause of his injuries. It was the fire at which he was warming himself that caused the injuries. If he had been at home and not at work, the nervous seizure would not have caused him the injury, and the fact that he was subject to such seizures cannot prevent his recovery.
Plaintiff was earning $20 per week and is totally and permanently disabled. He is entitled to 65% of his weekly wages for a period not to exceed 400 weeks, less a credit of $65 paid by the defendants.
The judgment of the lower Court is therefore reversed and there is now judgment for plaintiff and against the defendants, R. and P. Construction Company, composed of Robert L. Roland and William M. Perkins, and the Great American Indemnity Company, in solido, in the sum of $13 per week for a period not to exceed 400 weeks, beginning February 11, 1943, with legal interest on each weekly installment from due date until paid, less a credit of $65 formerly paid to plaintiff by defendants; and for all costs. The expert witness fees fixed by the lower Court are taxed as costs. *Page 383