572 So.2d 639 (1990)
Robert MORRIS, Plaintiff-Appellee,
v.
CITY OF OPELOUSAS, et al., Defendants-Appellants.
No. 89-633.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
*641 White & Pitre, Joshua J. Pitre, Opelousas, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John F. Wilkes III, Lafayette, for defendants-appellants.
Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
KNOLL, Judge.
The City of Opelousas (hereafter the City)[1] appeals the judgment of the trial court which awarded Robert Morris, an employee of the City, temporary total disability compensation benefits from July 4, 1988, to November 23, 1988, together with penalties, and attorney's fees.
The City contends that the trial court erred: (1) in its determination that Morris' accident "arose out of" his employment, since the efforts and/or stress connected to the job had absolutely nothing to do with his epileptic seizure, his fall, or his subsequent injury; (2) in finding the City arbitrary and capricious in denying worker's compensation benefits; and, (3) in finding Morris was disabled until November 23, 1988.

FACTS
The learned trial judge succinctly stated the pertinent facts of this case in its written reasons for judgment, which we adopt herein:
"Robert Morris was employed by the City of Opelousas as an operator at the town's water plant. His employment included monitoring the water pressure and regulating this pressure by turning different pumps on and off. The valves for these pumps were located down a set of stairs from the control room. On July 4, 1988, at approximately 10:30 p.m., Morris was proceeding from the control room down to the pumps when he fell down the stairway, knocking himself unconscious. He was transported by ambulance to Opelousas General Hospital. The medical testimony reported that he had sustained a number of contusions across his face, trunk, and back. Additionally, it was stated that at the time of his arrival, he was having a seizure. Morris was readmitted on July 10, with complaints of severe pain in his back, legs, and abdomen. On July 13 he was released.
After the accident, a conservative program of rest and physical therapy was prescribed for him. Both Dr. Bourgeois, an internal medicine specialist, and Dr. Domingue, a neurologist, monitored his progress. As of November 23, 1988, Morris was released from Dr. Domingue's care and allowed to return to work, subject to a repetitive lifting limitation of 20 pounds for the next six weeks. Thereafter, no restrictions would be attached.
Prior to the above events, Morris was a patient of Dr. Domingue, who was treating him for epileptic seizures. The doctor prescribed Dilantin to control the disorder. Morris, though, did not regularly take his medication and he consumed on *642 a daily basis a fair amount of alcoholic beverages, which stimulated the disorder."

ACCIDENT AND ATTORNEY'S FEES
The City contends that Morris' injuries were not the result of a job related accident. Rather, it argues that Morris' injuries were caused by his epileptic seizures.
LSA-R.S. 23:1021 (1988) defines accident as follows:
"(1) `Accident' means an unexpected or unforseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury."
An otherwise compensable accident does not cease to arise out of the employment simply because it can be attributed to a physical infirmity of the employee. Guidry v. Serigny, 378 So.2d 938 (La.1979). It is clear that a worker's pre-existing condition does not bar his recovery under our worker's compensation statute. Id. Moreover, the jurisprudence is replete with statements that an employer takes the employee as he finds him. An abnormally susceptible worker is entitled to the same protection as a healthy worker. Allor v. Belden Corp., 393 So.2d 1233 (La.1981).
In a case similar to the one sub judice, Ryland v. R. & P. Const. Co., 19 So.2d 349 (La.App. 2nd Cir.1944), a night watchman recovered worker's compensation benefits for burns he received on his feet when his epileptic seizure caused him to fall into a fire. In Ryland, at page 351, our brethren of the Second Circuit stated:
"It is our opinion plaintiff is entitled to recover compensation for the injuries he received for he was injured in an accident while performing the duties he was employed to perform. The nervous attack which rendered him unconscious was not the proximate cause of his injuries. It was the fire at which he was warming himself that caused the injuries. If he had been at home and not at work, the nervous seizure would not have caused him the injury, and the fact that he was subject to such seizures cannot prevent his recovery."
In the present case, Morris was clearly on the City's premises performing tasks incident to his employment with the water department. Morris had worked for the City for at least ten years, and it is undisputed that the City was aware of Morris' epilepsy at least since 1986. Nevertheless, Morris' work required him to climb stairs and monitor gauges at different levels of the building in the course and scope of his duties for the City.
On the basis of the jurisprudential interpretation of "accident" for the purposes of worker's compensation, we agree with the trial court that it was immaterial whether Morris fell as a result of his epilepsy or because, as initially argued by Morris, he tripped on a rug located on the second floor of the building. Paraphrasing Guidry, supra, Morris' accident was not the epileptic attack which may have caused him to fall. Morris' accident was the fall itself and this is so regardless of the precipitating reason therefor.
We likewise find no merit to the City's contention that the cause of the accident was Morris' failure to properly take his prescriptive medication and his consumption of alcoholic beverages. The defenses to claims for worker's compensation benefits are delineated in LSA-R.S. 23:1081. Although a worker's intoxication is a recognized defense, there was no proof of Morris' intoxication in the case sub judice. Furthermore, it is well settled that LSA-R.S. 23:1081's provision that no compensation shall be allowed for injury caused by an injured employee's willful intention to injure himself does not permit an employer to avail himself of defenses of contributory negligence, fault, or misconduct. Velotta v. Liberty Mut. Ins. Co., 241 La. 814, 132 So.2d 51 (1961). On the basis of these provisions, it is clear that there is no merit to the assertion that the City should not be liable for worker's compensation benefits because of any failure by Morris to take his prescribed medication.
Based on the same arguments raised regarding Morris' failure to show *643 that he suffered an accident arising out of his employment, the City contends that the trial court erred in awarding penalties and attorney's fees. We disagree. The law on the issue presented, i.e., whether Morris' injuries arose out of his employment, is well settled and fully discussed in the jurisprudence. Ryland, supra. On this basis, we cannot say that the trial court's determination that the City was arbitrary and capricious was clearly wrong.

TEMPORARY TOTAL DISABILITY
The City next contends that the trial court was manifestly erroneous in its determination that Morris' temporary total disability did not end until November 23, 1988. It argues that temporary total disability benefits should have ceased no later than October 14, 1988.
In proving a claim for temporary total disability, the plaintiff has the burden of establishing his claim to a legal certainty and by a reasonable preponderance of the evidence. When claiming a total disability, whether permanent or temporary, the plaintiff must prove his inability to engage in any gainful occupation whether or not the same or similar to that in which he was customarily engaged when injured. In doing so, the plaintiff may rely upon medical and lay testimony. Once the trial court has made factual findings as to disability and the length thereof, those determinations are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Bailey v. Zurich American Ins. Co., 503 So.2d 611 (La.App. 4th Cir.1987).
In the case sub judice, the City focuses on the terminal date of disability. When Morris fell down the steps of the water department on July 4, 1988, he was taken by ambulance to Opelousas General Hospital. Dr. George Bourgeois treated Morris in the hospital until July 7, 1988, for contusions on the upper trunk and face, bruises on the back, and a subjunctival hemorrhage on the right side of the face. On July 10, 1988, Morris was re-admitted to Opelousas General for complaints of pain in the back, legs, and abdomen. After Dr. Glynn Granger, a surgical consultant, examined Morris and determined that there was no evidence of internal injury, Dr. Bourgeois provided supportive care and Morris was discharged on July 13, 1988.
After his release from the hospital, Morris was regularly seen by Dr. Bourgeois and Dr. James Domingue, a neurologist who had treated Morris for his epileptic disorder since August 6, 1986. In early September, Dr. Bourgeois referred Morris to Dr. Frazier Gaar, an orthopedic surgeon, because of Morris' complaints of pain in the arm, back and legs. Dr. Gaar's examination of Morris on September 14, 1988, revealed some tenderness in the back, but no evidence of objective neurological problems in that area. Dr. Gaar opined that Morris was not yet ready to return to work, but that he expected that Morris could return to work within a month. Dr. Gaar did not examine Morris again.
Once Dr. Gaar concluded his examination, Dr. Bourgeois continued to treat Morris on September 30, October 14 and 28, and finally on November 11, 1988, for continued complaints of pain in the back, arm, and legs. Dr. Domingue last treated Morris on November 23, 1988, and opined that as of that date Morris' orthopedic and neurological problems progressed to a point that he was able to recommend that Morris could resume light duty work.
Based upon the record evidence, we cannot say that the trial court was manifestly erroneous in its conclusion that Morris was disabled until November 23, 1988. After Dr. Gaar's single examination, Morris' complaints of pain persisted and he continued medical treatment with both Dr. Domingue and Dr. Bourgeois.
For the foregoing reasons, the judgment of the trial court is amended to grant Risk Management's exception of no cause of action, and is recast as follows: IT IS ORDERED, ADJUDGED, AND DECREED that the peremptory exception of no cause of action raised by Risk Management Incorporated is granted, and Robert Morris' petition against Risk Management Incorporated is dismissed with prejudice.
*644 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of plaintiff, Robert Morris, and against the City of Opelousas, awarding Robert Morris temporary total disability compensation benefits from July 4, 1988 to November 23, 1988, when he was released and allowed to return to work.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendant, the City of Opelousas, pay all medical costs incurred with the accident, subject to a credit for any payments previously made by the defendant.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff, Robert Morris, is entitled to statutory penalties and attorney's fees in the amount of TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,500). Cost of trial and this appeal are assessed to the City of Opelousas.
AMENDED IN PART; AFFIRMED IN PART; AND RENDERED.
NOTES
[1] Although the record does not show that the trial court ruled on the exception of no cause of action filed by Risk Management Incorporated, another defendant sued by Morris, we have authority on our own motion to notice that Morris' petition against Risk Management does not disclose a cause of action. LSA-R.S. 33:1345; Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3rd Cir.1983), writs denied, 438 So.2d 573, 576 (La.1983). Accordingly, we shall dismiss Morris' claim against Risk Management, and amend the trial court's judgment to delete Risk Management as a defendant cast with liability for worker's compensation benefits, penalties, and attorney's fees.